UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMARIO MINOR,

      Petitioner,

v.

SUSAN DAVIS,

      Respondent.

_____/

Case No. 08-cv-13122

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING PETITION FOR WRIT OF
## HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE
## OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

This is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner

Demario Minor is presently confined at the Thumb Correctional Facility in Lapeer, Michigan.

In his pro se application, Minor challenges his convictions for assault with intent to rob while

armed, Mich. Comp. Laws 750.89; felon in possession of a firearm, M.C.L. 750.224f;

possession of a firearm in the commission of a felony, M.C.L. 750.227b; and being a third

felony habitual offender, M.C.L. 769.11. Having reviewed the record, the Court finds that

Minor has failed to establish a right to habeas relief and will deny the petition.

### STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore,

pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*          "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979)) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing a petitioner's claims, a petitioner is "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## BACKGROUND

On the morning of August 6, 2004, a red pickup truck pulled up to a beer and wine

store in Grand Rapids, Michigan owned by Leon Moody. A young man exited the vehicle and entered the store. The man purchased some candy before leaving the store. The red truck pulled away from the store, although Moody did not see the man who had entered his store get into the truck. Trial Tr. 8/23/05, pp. 121-23, ECF No. 9-4.

A few minutes later, another young man entered the store, pointed a handgun at Moody's head, and ordered Moody to give him his money, threatening to "blow [Moody's] head off." Moody responded, "I'll give you some money. You want some money?" Moody then slapped his assailant's firearm away before pulling out a weapon of his own, a .357 Magnum. The robber fled the store, as Moody fired two shots at him. *Id.* at 124-25.

Richard Lee and Robert Green were in a parking lot across the street from the store, when they heard one or two gunshots and saw the robber flee from the scene. The men heard the robber state that he had been hit, before observing him run down an alley to a red pickup truck, where he got in, before the truck drove away. *Id.* at 134-36, 142-143, 148.

Before the police responded to the scene, Green received a call on his cell phone, from "[a] little guy around the corner." Green met with this man, who handed him a handgun wrapped in toilet paper. Green turned this gun over to the police. *Id.* at 137-38, 144-46, 153-56.

Grand Rapids Police Detective James Jorgensen responded to the robbery call. In the midst of the investigation, Detective Jorgensen received a call that Minor had been admitted to Blodgett Hospital with a gunshot wound. Detective Jorgensen met Minor at the hospital, informed him he was under arrest, and advised him of his *Miranda* rights. After a brief conversation, Minor informed the detective that he wanted an attorney, at which point the conversation ended. *Id.* at 164-67.

4

Grand Rapids Police Officer Curtis Satterthwaite was assigned to guard Minor in the hospital while he recovered from his wounds. Officer Satterthwaite testified that Minor was asleep when Satterthwaite arrived at the hospital. About an hour into Officer Satterthwaite's shift, Minor awoke. Officer Satterthwaite did not interrogate Minor about the robbery, but testified "you're up there for about four hours, and you can either sit there in silence and watch TV together, or you can start talking to each other and get to know him a little bit and start talking about things, and obviously you're going to ask questions about a personal nature. He's going to ask questions: how long have you been on the force, where do you live, plus on top of it all I had recognized Demario from a previous call." Minor informed Officer Satterthwaite that he had been shot while on Madison Avenue and wondered why he was essentially under arrest and being watched by the police when he was an "innocent bystander on Madison." Officer Satterthwaite replied "no, you were shot on Eastern Avenue." Minor then told Officer Satterthwaite that he had earlier expressed these concerns in the emergency room to an officer from the canine unit, even mentioning the police canine dog by name. This concerned Officer Satterthwaite, who asked Minor how he knew so much about the dog and the officer who was the dog handler. After speaking a bit longer, Officer Satterthwaite told Minor that he was lying about being shot on Madison Avenue and that he had in fact been shot on Eastern Avenue. Minor admitted that he had lied about being shot on Madison Avenue and then stated: "I tried to take the money, but I never had the gun and the money was laying out on the table." Officer Satterthwaite emphasized that he could not interrogate Minor, and tried not to do so, but that "we're talking about where he got shot . . . and then he pops up, you're right, I'm lying about it. I tried to take the money." Trial Tr. 8/24/05, pp. 254-61, ECF No. 9-5.

5

Grand Rapids Police Officer Timothy Johnston was also assigned to guard Minor at the hospital. During Officer Johnston's shift, Minor received a telephone call from his girlfriend. Officer Johnston was able to hear Minor's portion of the conversation. While on the phone, Minor became angry and began yelling at his girlfriend. Officer Johnston recalled that Minor "said something to the effect of, what? I took a bullet for that n[-----]." After ending the conversation, Minor asked Officer Johnston if he could speak with a sergeant or a detective. Officer Johnston informed Minor that because it was a Sunday afternoon, he would probably have to wait until Monday. Minor informed Officer Johnston that he had previously told the police that he had acted alone, but "that that was not true, however, that there was another individual involved." Minor told Officer Johnston "I'm afraid if I tell them everything this other guy will kill me," and said that the other person "had already beat a murder charge in Grand Rapids." Minor also told Officer Johnston that Moody sold illegal drugs out of his store, and that petitioner and the other unnamed individual planned to rob the store. Minor indicated that his co-conspirator went into the store briefly before exiting. Minor then entered the store with the gun. Minor indicated that the store clerk shot him as he attempted to run away. Minor stated that his co-conspirator and his girlfriend had been waiting for him in a red pickup truck and that they took him to the hospital after the robbery. Trial Tr. 8/25/05, pp. 289-95, ECF No. 9-6.

While investigating the crime, police found an envelope in the alley from which Minor had fled the crime scene. The letter had been addressed to Minor's girlfriend, Victoria Matthews. Trial Tr. 8/23/05, pp. 158, 174, 182. Later in the investigation, Grand Rapids Police Detective Erica Fannon received information that led her to suspect that Antonio Douglas had participated in this robbery with Minor. Detective Fannon showed Moody a

6

photo lineup and asked him if he recognized the man who was in the store immediately before the robber. Moody picked Douglas's picture out of the photo array. *Id.* at 185-87.

Minor was tried and convicted in Kent County Circuit Court for the robbery. He was sentenced as a habitual offender, third offense, under M.C.L. 769.11, to concurrent prison terms of 17 to 40 years for assault, 5 to 10 years for felon-in-possession, and a consecutive 2 year term for the felony-firearm. Minor's conviction was affirmed on appeal. *People v. Minor*, No. 267012 (Mich. Ct. App. Feb. 8, 2007); *leave to appeal denied*, 479 Mich. 862 (2007).

Minor then filed this petition for writ of habeas corpus. The petition was held in abeyance while Minor returned to the state courts to exhaust additional claims. *See* Order of Admin. Closure, ECF No. 17. Minor accordingly filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Minor,* No. 04-08670-FC (Kent Co. Cir. Ct., December 8, 2010). The Michigan appellate courts denied Minor leave to appeal. *People v. Minor,* No. 304678 (Mich. Ct. App. Aug. 9, 2011); *leave to appeal* denied, 491 Mich. 852 (2012). Having exhausted his state remedies, the Court then granted Minor's motion to reopen the petition to the Court's active docket and to file an amended habeas petition on August 23, 2012. *See* Order Reopen, ECF No. 28.

## DISCUSSION

Minor seeks habeas relief on the following grounds:

1. Petitioner is entitled to a new trial where he was denied effective assistance of counsel at trial for failing to change [sic] the alleged statements made by Petitioner in violation of his V and VI Am constitutional rights.

2. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel, where appellate counsel failed to support the claim of ineffective assistance of trial counsel with available supporting documentation and failing to properly argue on appeal, the issue raised of trial counsel's failure

7

to file a motion to suppress and attack the voluntariness of Petitioner's statements made after he had been advised of his rights in violation of his V and VI Am constitutional rights.

3. Appellate counsel was ineffective for failing to motion for an evidentiary hearing to preserve the record for full appellate review. [1]

I.   Statute of Limitations

Respondent claims that Minor's third claim, which petitioner raised for the first time in his amended habeas petition that he filed with this Court in 2012, is barred by the statute of limitations contained in 28 U.S.C. § 2244(d) because it does not relate back to the claims contained in the original habeas petition that Minor filed with this Court in 2008.

Civil Rule 15(c)(2), as applied to habeas corpus proceedings by 28 U.S.C. § 2242, Fed. R. Civ. P. 81(a)(2), and Habeas Corpus Rule 11, allows a habeas petitioner to amend his habeas petition with "leave of court" any time during the proceedings. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Before a responsive pleading has been served, pleadings may be amended once as a "matter of course" without seeking leave of the court. *Id.* Amendments made after a statute of limitations has run can relate back to the date of the original pleading if the original and amended pleadings "arise out of the conduct, transaction, or occurrence." *Id.* (quoting Fed. R. Civ. P. 15(c)(2)). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664.

The ineffective assistance of appellate counsel claim that Minor has included in his amended habeas petition belongs to the same common core of operative facts as his

---

[1]In his amended petition, Minor also filed a claim challenging the sufficiency of evidence to convict him. On April 4, 2013, this Court granted Minor's motion to strike this claim from his petition. *See* Order Striking, ECF No. 34.

original habeas petition. Although the ineffective assistance of appellate counsel claim is based on a new theory of relief, it arises from the same facts as the original habeas petition, in which Minor alleges that he was deprived of the effective assistance of trial counsel and the effective assistance of appellate counsel for failing to properly present petitioner's ineffective assistance of trial counsel claim to the state courts. Minor's ineffective assistance of appellate counsel claim that he raises in his amended habeas petition is based on appellate counsel's alleged failure to request an evidentiary hearing for his ineffective assistance of trial counsel claim on his direct appeal. This is similar to Minor's second claim, in which he alleges that appellate counsel was ineffective for failing to properly argue his ineffective assistance of trial counsel claim with the state courts on his direct appeal. Therefore, the original and amended petitions would be based on the same common core of operative facts, and Civil Rule 15(c)'s relation back principles would apply to make the ineffective assistance of appellate counsel claim raised by Minor in his amended habeas petition timely filed pursuant to 28 U.S.C. § 2244(d)(1)'s statute of limitations.

II.   <u>Procedural Default Issue</u>

Respondent contends that Minor's second and third claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508. This rule, M.C.R. 6.508(D)(3), provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

9

Here, Minor could not have procedurally defaulted his ineffective assistance of appellate counsel claims, because state post-conviction review was the first opportunity that he had to raise these claims. *See Guilmette v. Howes,* 624 F.3d 286, 291 (6th Cir. 2010); *see also Hicks v. Straub*, 377 F.3d 538, 558, n.17 (6th Cir. 2004). The Court will consider Minor's claims.

III.   Ineffective Assistance of Counsel Claims

In his first claim, Minor alleges that his trial counsel was ineffective for failing to move to suppress his inculpatory statements to the police. In his second and third claims, he alleges that his appellate counsel was ineffective for failing to present a better argument for, present documentation in support of, or to request an evidentiary hearing in support of his ineffective assistance of trial counsel claim.

A.  Legal Standards

To show a denial of the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

10

proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.' " *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting

*Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S.

Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has stated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011). Finally, "reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" almost eight years ago and an appeal of right that took place six years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 131 S. Ct. at 789.

B. <u>Application</u>

Minor initially contends that his trial counsel was ineffective for failing to move for the suppression of his statements to Officers Satterthwaite and Johnston. Minor argues that these statements should have been suppressed because they were made after petitioner had invoked his right to counsel. Minor further contends that trial counsel's failure to file a motion to suppress his confessions amounted to the constructive denial of counsel which entitles him to automatic reversal of his conviction even in the absence of a showing of prejudice.

Taking Minor's second argument first, it is true that where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been

a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F.3d 851, 860 (6th Cir. 2002) (quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

In the present case, counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F.3d at 860-62. Trial counsel participated in the jury selection process and made several peremptory challenges. Trial Tr. 8/22/05, pp. 45-51, 54-56, 61-65, 68-87, ECF No. 9-3. Trial counsel made an opening statement. Trial Tr. 8/23/05, pp. 117-20. Counsel cross-examined the witnesses. *Id.,* pp. 130-32, 138-40, 146-48, 158-60, 161, 175-77, 194-99, 206; Trial Tr. 8/24/05, pp. 214-15, 246-52, 266-75, 282-83, Trial Tr. 8/25/05, pp. 296-302, 304, 315-19. Counsel made a number of objections, including successfully objecting to the admission of statements that Minor allegedly made to Detective Jorgensen after he had invoked his right to counsel with that officer. Trial Tr. 8/23/05, pp. 167-171. Counsel also made a closing argument. Trial Tr. 8/25/05, pp. 337-46.

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell*, 535 U.S. at 697). Minor's counsel actively participated in petitioner's trial. Minor's attorney failed to file a suppression motion on his behalf. The Supreme Court has acknowledged that "the failure to file a suppression

13

motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Indeed, in *Kimmelman,* the Supreme Court employed the *Strickland* standard in evaluating the claim that trial counsel had been ineffective for failing to file a suppression motion. *Id.* at 381-91. In the present case, counsel's alleged failure to file a suppression motion does not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and Minor would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Benge*, 474 F.3d at 247.

The Michigan Court of Appeals rejected Minor's claim and found defense counsel did not err by failing to seek suppression, or any prejudice to Minor by that failure.

> The record indicates that defendant, who was being treated at a hospital for a gunshot wound, exercised his right to remain silent and declined to make a statement. He remained in the hospital for a few days under guard. Two of the guards, Satterthwaite and Johnson (sic), testified that defendant spontaneously made inculpatory statements without questioning, although Satterthwaite admitted that he challenged defendant's statements by contradicting him and once accused him of lying. Defendant has not explained how Satterthwaite's expressions of disbelief constituted interrogation or its functional equivalent. Because defendant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims," *Green Oak Twp v. Munzel*, 255 Mich.App 235, 244; 661 NW2d 243 (2003), his "failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v. Harris*, 261 Mich.App 44, 50; 680 NW2d 17 (2004). In any event, any statements defendant made to Satterthwaite were cumulative of those made to Johnson, who never said anything to defendant that might elicit a confession. Rather, defendant asked to speak to a detective following an upsetting telephone conversation, went on to explain why he wanted to speak to a detective, and incriminated himself in doing so. Because there is no basis in the record for concluding that defendant's statements to Johnson resulted from any interrogation initiated by the police, defense counsel was not ineffective for failing to challenge those statements, and defendant has failed to show that he was prejudiced by any error in the admission of his statements to Satterthwaite.

*Minor,* No. 267012, Slip. Op. at * 2. As discussed above, the Court must determine whether

14

this analysis is reasonable under § 2254(d).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect: (1) the person must be warned that he has a right to remain silent; (2) that any statement he does make may be used against him; and (3) that he has a right to the presence of an attorney, either appointed or retained. *Id* at 444.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988)(quoting *Miranda,* 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010) (quoting *Roberson*, 486 U.S. at 681). Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever

15

compulsion to speak the suspect may be feeling." *Roberson,* 486 U.S. at 686. Minor has failed to establish that his statements were obtained in violation of *Miranda* or *Edwards.*

With respect to his first inculpatory statement, there is no indication that Officer Satterthwaite was attempting to interrogate Minor in his hospital room. The special procedural safeguards outlined in *Miranda* are required not merely when a suspect is taken into custody, but instead where a suspect in custody is subjected to interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). "'Interrogation', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id. Miranda* warnings are required whenever a person in custody is subject either to express questioning or its "functional equivalent." *Id.* at 300-01. Thus, for *Miranda* purposes, the term "interrogation" refers not only to express questioning of a suspect by law enforcement officials, but also to "any words or actions on the part of the police (*other than those normally attendant to [an] arrest or custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (italics added).

Officer Satterthwaite testified that he was not attempting to interrogate Minor about the robbery but was merely engaging in casual conversation with petitioner to pass the time. During these light discussions, Minor indicated that he had been shot on Madison Avenue. Officer Satterthwaite's response to Minor that he had been shot on Eastern Avenue and that he was lying about where he had been shot were not questions that were expressly designed to elicit an incriminating response but were merely part of a casual conversation between the two men. As such, the admission of Minor's statement to Officer Satterthwaite did not violate *Miranda* or *Edwards. See U.S. v. Goist,* 59 F. App'x. 757, 763

16

(6th Cir. 2003) (finding that suspect's incriminating custodial statement, made while engaged in small talk with investigating officer, was not product of interrogation); *see also United States v. Tail,* 459 F.3d 854, 858 (8th Cir. 2006) ("Polite conversation is not the functional equivalent of interrogation."); *U.S. v. Satterfield,* 743 F.2d 827, 849 (11th Cir. 1984) ("Incriminating statements made in the course of casual conversation are not products of custodial interrogation."). Moreover, Officer Satterthwaite's comment that Minor was lying about having been shot on Madison Avenue did not amount to interrogation within the meaning of *Miranda.* At best, Officer Satterthwaite was merely explaining to Minor that the evidence established that he had been shot on Eastern Avenue. A police officer's "'statement regarding the evidence and the possible consequences of the charges [a suspect] faced,' ...does not necessarily 'r[i]se to the level of interrogation under existing United States Supreme Court precedent.'" *McKinney v. Ludwick*, 649 F.3d 484, 490 (6th Cir. 2011) (quoting *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006)). Finally, Officer Satterthwaite's expression of disbelief did not constitute interrogation, within the meaning of *Miranda,* because Officer Satterthwaite's statement that Minor had lied about which street that he had been shot on did not compel Minor to explain why he had been shot on Eastern Avenue or otherwise explain why he had been at that location. *See U.S. v. Smalls,* 342 F. App'x. 505, 509 (11th Cir. 2009).

Similarly, Minor's statements to Officer Johnston were properly admitted. Because Minor initiated the conversation with Officer Johnston, his statements were not the product of a custodial interrogation. In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even

17

though the defendant had previously invoked his right to counsel. *Id.* at 1041–42. The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id.* at 1045–46. By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id.* at 1055. The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008) (quoting *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994)).

In the present case, Minor asked Officer Johnston if he could speak with a sergeant or a detective. When informed by Officer Johnston that he would probably be unable to speak with a detective because it was Sunday, Minor began to confess his involvement in the crime without any prompting from Officer Johnson. Because Minor freely initiated the conversation with Officer Johnston, without any improper influence or pressure from the officer, the admission of his statements to Officer Johnston did not violate *Edwards. Davie,* 547 F.3d at 305; *see also Fautenberry v. Mitchell*, 515 F.3d 614, 630 (6th Cir. 2008).

Minor has failed to establish that his statements to Officers Satterhwaite or Johnston were obtained in violation of *Edwards.* In light of the foregoing, there was no reasonable probability that a motion to suppress based on an alleged *Edwards* violation would have succeeded in this case. Minor was therefore not denied effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson,* 123 F. App'x. 207, 210-12 (6th Cir. 2005).

In his second claim, Minor alleges that his appellate counsel was ineffective for failing to offer supporting documentation or caselaw in support of his ineffective assistance of trial counsel claim. In his related third claim, Minor alleges that appellate counsel was ineffective for failing to request an evidentiary hearing on his ineffective assistance of trial counsel claim.

This Court has already determined that the police did not obtain Minor's statements from him in violation of *Edwards* and that consequently, trial counsel was not ineffective for failing to move to suppress these statements on this basis. In light of the fact that Minor's ineffective assistance of trial counsel claim is meritless, he is unable to show that he was prejudiced by appellate counsel's failure to more sufficiently argue the issue on his direct appeal. *Cf. Koras,* 123 F. App'x. at 212-13 (appellate counsel not ineffective for failing to challenge trial counsel's ineffectiveness in failing to file suppression motion based on an *Edwards* violation when there was no basis to file such a motion). In light of the fact that Minor's ineffective assistance of trial counsel claim is without merit, petitioner is likewise unable to establish that he was prejudiced by appellate counsel's failure to conduct an evidentiary hearing on his claim. *See e.g.*, *Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other grds,* 589 F.3d 302 (6th Cir. 2009). Minor is not entitled to habeas relief on his second or third claims.


IV.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability ("COA").

28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Minor has not made a substantial showing of the denial of a constitutional right with respect to his claims. *See* 28 U.S.C. § 2253(c)(2). Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any

20

appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

**ORDER**

**WHEREFORE** it is hereby **ORDERED** that Minor's Amended Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability.

**IT IS FURTHER ORDERED** that the Court **DENIES** leave to proceed in forma pauperis on appeal.

**SO ORDERED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 30, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 30, 2013, by electronic and/or ordinary mail.

Carol Cohron
Case Manager

21